The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Lorrie L. Dollar and the briefs and arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence or to amend the prior Opinion and Award, except for modifications with respect to ratings for permanent partial disability. The Full Commission therefore affirms the Opinion and Award of the Deputy Commissioner with modifications.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in their Pre-Trial Agreement which was filed on June 3, 1998, which are incorporated herein by reference, and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act at all relevant times.
2. The defendant was a duly qualified self-insured, with GAB Business Systems as its servicing agent.
3. An employee-employer relationship existed between the parties at all relevant times.
4. The plaintiff sustained an admittedly compensable injury on April 17, 1997 when a box fell from the conveyor belt, hitting her in the shoulder area. Following the compensable injury, the defendant submitted a Form 60, Employers Admission of Employees Right to Compensation. The plaintiff received temporary total disability benefits from May 22, 1997 through May 28, 1997.
5. The plaintiffs average weekly wage was $360.00, which yields a maximum compensation rate of $240.01 per week.
6. The issue for determination was whether the plaintiff is entitled to any indemnity benefits after May 22, 1997, and if so, in what amount.
7. The parties stipulated into the record:
a. Medical reports from Dr. Robert Saltzman, fourteen pages;
b. Medical records from Dr. Jerry Watson, forty-seven pages;
c. Hydrotherapy Records from Wilkes Medical Center Wellness Center, nine pages;
d. Physical Therapy Records from Robert Russell, nine pages;
e. Plaintiffs Employee File, thirty-one pages; and
f. Plaintiffs Recorded Statement, seven pages.
***********
Based upon all of the competent evidence of record and the reasonable inferences therefrom, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, the plaintiff was a forty-two year old female.
2. Plaintiff began working for the defendant-employer in 1993 at its Wilkesboro facility and was transferred to the Statesville location in September of 1996 when the Wilkesboro facility closed. The plaintiff worked in the shipping department where her duties included loading and unloading pallets and placing merchandise on a conveyor belt. She worked a forty-hour workweek.
3. On April 17, 1997, plaintiff reported to Benjamin Beard, the shipping department supervisor, that a box or boxes hit her in the shoulder. Boxes weighed between four to eight pounds. Mr. Beard referred the plaintiff to Lynne Dellinger, the defendants benefits coordinator. The plaintiff reported to Ms. Dellinger that a box or boxes hit her shoulder when it fell off the line.
4. The plaintiff gave a recorded statement to claims representative Leigh Anne Reynolds on April 22, 1997, in which she reported that about eight boxes had struck her on the left side of her back on the shoulder.
5. Following the injury, defendant sent plaintiff to orthopedic surgeon Dr. Robert Saltzman. A physical examination revealed no bruising or swelling over the rhomboids medial of the scapula on the left. Dr. Saltzman diagnosed plaintiff with a contusion to the upper back. Relafen was prescribed for pain, and she was instructed to use moist heat and ice massage for four to five days. Dr. Saltzman restricted the plaintiff to not lifting more than fifteen pounds through May 1, 1997. Physical therapy was ordered on April 24, 1997.
6. Defendant initially referred the plaintiff to physical therapy at HealthSouth, which was approximately forty-five minutes from her home. However, after plaintiff advised that she did not drive and the distance would pose a hardship, defendant arranged for her to attend therapy at Northwest Physical Therapy.
7. After Dr. Saltzman ordered light duty, plaintiff was assigned to place labels on boxes on the conveyor line. After a couple of days, plaintiff reported that she was unable to perform that job. She last worked for the defendant on May 10, 1997. The labeling job has been available for the plaintiff since that time.
8. On May 6, 1997, plaintiff reported to Northwest Physical Therapy with a diagnosis of a contusion and strain of the left shoulder. She complained of pain in the thoracic and cervical regions and in the left shoulder. After nine sessions, plaintiff completed therapy on May 21, 1997, following which therapist Robert Russell conducted a physical capacity evaluation, following which he found her capable of performing work at the medium to heavy physical demand classification level, with the ability to lift seventy-eight pounds from floor to waist on an occasional basis. The results of this evaluation were sent to Dr. Saltzman. On May 22, 1997, Dr. Saltzman reviewed the physical capacity evaluation from Robert Russell, and found plaintiff capable of returning to work.
9. On May 23, 1997, plaintiff sought treatment on her own from Dr. Jerry Watson, a general surgeon, with whom she had treated since 1993 for a myriad of health problems, including a number of prior back injuries. Plaintiff did not seek authorization from either the employer or the Industrial Commission for the treatment by Dr. Watson. Dr. Watson wrote plaintiff out of work from May 23, 1997, until August 4, 1997, when he said she could return to work with a 15-pound lifting restriction.
10. After the plaintiff took work restrictions from Dr. Watson to the employer, she talked with Lynne Dellinger and was told there was no available work within Dr. Watsons lifting restriction. However, Ms. Dellinger advised that there was work available within the restrictions imposed by Dr. Saltzman.
11. Defendant issued its workers compensation checks ahead of the time due and payable, and Ms. Dellinger advised the plaintiff that a check had been cut for her in error for the week dated May 22, 1997. Plaintiff was only out of work for one day in this time period and thus only entitled to $34.28 in compensation, but the check had been issued for the entire week or $240.00. Despite being notified of this, plaintiff cashed the check on May 27, 1997.
12. The greater weight of the medical evidence supports a finding that plaintiff was capable of returning to light duty work on and after May 22, 1997 with the ability to perform medium to heavy level work based upon the restrictions imposed by Dr. Saltzman.
13. When he released her with a 15-pound lifting restriction on August 4, 1997, Dr. Watson rated her at a 15% permanent partial disability of the back. However, Dr. Watson based his rating upon the American Medical Association rating guide and the Full Commission finds that the rating more propertly would be 5% under the Industrial Commission guidelines.
***********
Based upon the foregoing findings of fact and conclusions of law the Full Commission reaches the following additional:
 CONCLUSIONS OF LAW
1. As a result of the compensable injury, plaintiff is entitled to temporary total disability compensation, which has been paid to her. N.C. Gen. Stat. 97-28.
2. Plaintiff is entitled to have the defendant pay for medical expenses incurred as a result of the compensable injury as may be required to provide relief, effect a cure or lessen the period of disability; however, she is not entitled to have the defendant pay for medical treatment which she sought on her own from Dr. Watson, as she did not seek authorization for such treatment from the Industrial Commission. N.C. Gen. Stat. 97-2(19); 25.
3. Plaintiff is entitled to 15 weeks of permanent partial disability for the 5% rating to her back. Although Dr. Watson was not an authorized treating physician, his testimony as to permanent partial disability is entitled to be considered by the Full Commission and was sufficient to sustain a 5% rating to the back. N.C. Gen. Stat. 97-31(23).
4. Defendant is entitled to a credit for 6/7ths of a week of compensation that was paid in error.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay medical expenses incurred when bills for the same have been submitted, in accordance with the provisions of the Act. However, defendant shall not be liable for payment for medical expenses incurred due to the unauthorized treatment which the plaintiff sought from Dr. Watson.
2. Subject to the attorney fee set out in Paragraph 3 below, Defendant shall pay a lump sum of $3,394.28 to plaintiff for the 5% disability of the back. This amount represents 15 weeks of compensation less 6/7ths of a week credit. Interest at 8% per year shall be paid on the $3,394.28 from August 10, 1998, the date of the hearing before the Deputy Commissioner, until paid.
3. Defendant shall pay an attorney fee of $848.57 to plaintiffs attorney, which amount shall be deducted from the amounts otherwise due plaintiff in Paragraph 2 above.
4. Defendant shall pay the costs, including the expert witness fee of $90.00 to Robert Russell and $200.00 to Dr. Jerry Watson.
This 9th day of June 2000.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
S/_______________ LAURA K. MAVRETIC COMMISSIONER